**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**
**WESTERN DIVISION AT DAYTON**

**Michael A. Darden,**

*Plaintiff*,

**v.**                                                      **Case No. 3:22-cv-264**
                                                           **Judge Thomas M. Rose**

**Montgomery County Board of**
       **Commissioners,** *et al.*,

*Defendants*.

---

**ENTRY AND ORDER GRANTING MOTION TO DISMISS BY DEFENDANT BRIGID'S PATH WITH JILL KINGSTON AS C.E.O., DOC. 13, 16,  DENYING MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM AND ON ADDITIONAL GROUNDS BY DEFENDANTS KINGSTON (*ROOKER-FELDMAN*), DOC. 14, GRANTING MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM BY OHIO DEPARTMENT OF JOBS AND FAMILY SERVICES, DOC. 17, GRANTING MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM BY MONTGOMERY COUNTY COMMISSIONERS AND MONTGOMERY COUNTY JOBS AND FAMILY SERVICES, DOC. 23, AND TERMINATING CASE.**

---

Plaintiff's complaint decries events surrounding the adoption of his son. Pending before the Court are Motion to Dismiss by Defendant Brigid's Path with Jill Kingston as C.E.O., Doc. 13, 16,[1] Motion to Dismiss for Failure to State a Claim and on Additional Grounds by Defendants

---

[1] The document was refiled to correct the docketing.

1

Kingstons, Doc. 14, Motion to Dismiss for Failure to State a Claim by Ohio Department of Jobs and Family Services, Doc. 17, and Motion to Dismiss for Failure to State a Claim by Montgomery County Commissioners and Montgomery County Jobs and Family Services. Doc. 23.

## I.      Background

On January 17, 2017, when N.D. was born, his biological mother identified Plaintiff as N.D.'s biological father. Shortly after birth, N.D. tested positive for Suboxone, was diagnosed with neonatal abstinence syndrome, and was transferred to a neonatal intensive care unit. Doc. 16-3, Exhibit C; Doc. 1, ¶ 20.[2] Montgomery County Department of Jobs and Family Services Children Services Division ("MCCS") became involved with N.D. and his biological mother while N.D. was in the hospital. Doc. 16-3, Exhibit C ¶ 3. MCCS contacted Plaintiff in February 2017 to inform him that he was listed as the biological father of N.D., and he was provided information to establish paternity and custody. Doc. 16-3, Exhibit C ¶ 3; Doc. 16-2, Exhibit B at 2.

On February 22, 2017, MCCS filed a Dependency Complaint with the Montgomery County Court of Common Pleas, Juvenile Division and, on that same day, N.D. was released from the hospital and placed in foster care with Defendants Jill and Nick Kingston. Doc. 16-3, Exhibit C ¶ 3; Doc. 1. Plaintiff alleges Defendants Jill and Nick Kingston were given preferential

---

[2] The Court takes judicial notice of the following documents: Magistrate Durden's Order (Doc. 16-1, Exhibit A); Judge Capizzi's Final Judicial Order (Doc. 16-2, Exhibit B); Court of Appeals of Ohio, Second Appellate District Opinion (Doc. 16-3, Exhibit C); the Supreme Court of Ohio's decision declining to accept jurisdiction (Doc. 16-4, Exhibit D); and N.D.'s adoption decree (Doc. 16-5, Exhibit E). In ruling on a motion to dismiss under Rule 12(b)(6), a court may consider the Complaint as well as documents referenced in the pleadings and matters of which a court may properly take notice, and public documents. *Tellabs, Inc. vs. Makor Issues and Rights, Ltd*, 551 U.S. 308; 127 S. Ct. 2499, 2509 (2007); *Greenberg vs. Life Ins. Co of Va*., 177 F.3d 507, 514 (6th Cir. 1999); see also *Jackson vs. City of Columbus*, 194 F.3d 737, 745 (6th Cir. 1999). Because Plaintiff references the permanent custody hearing and subsequent opinions and relies on them to support his claims, these document are incorporated by reference and the Court may consider them in deciding upon the motions to dismiss. *Sollenberger v. Sollenberger*, 173 F. Supp. 3d 608, 618 (S.D. Ohio 2016); See *Nat'l Assoc. of Minority Contractors, Dayton Chapter v. Martinez*, 248 F. Supp. 2d 679, 681 (S.D. Ohio 2002); and *Dobrski v. Ford Motor Co*., 698 F. Supp. 2d 966, 974 (N.D. Ohio 2010).

placement for N.D. because Jill Kingston had experience with babies born to opioid addicted mothers and had started a neonatal center, Brigid's Path, to care for opioid addicted children. However, at this time, Defendant Brigid's Path was not in existence and would not open its doors until December 2017. Doc. 1 ¶ 53.

N.D. was adjudicated Dependent on March 16, 2017, as a result of being removed from the care of her mother, Chelsie Daniel. Doc. 16-3, Exhibit C ¶¶ 3-4; Doc. 16-2, Exhibit B at 2; Doc. 1 ¶ 22. Defendant Vonderwall was appointed Guardian *ad Litem* for N.D. and contacted Plaintiff in March 2017. Doc. 16-3, Exhibit C ¶4; Doc. 16-2, Exhibit B at 3; Doc. 16-6, Exhibit F ¶ 23. During the conversation, Plaintiff told Defendant Vonderwall that he did not believe N.D. was his child and asked her not to contact him again. Plaintiff stated that he did not want to be involved with N.D. and he did not want Defendant Vonderwall to discuss the matter with his wife. Doc. 16-3, Exhibit C ¶4; Doc. 16-2, Exhibit B at 3.

Plaintiff met Ms. Daniel the year prior and engaged in a "one night" extramarital affair, which Ms. Daniel had alleged impregnated her. Plaintiff and Ms. Daniel did not have an ongoing relationship. In March 2017, Corrin Cameron, a caseworker with Montgomery County Jobs and Family Services contacted Plaintiff by phone and told him that Ms. Daniel had stated that he was the father of her newly born child N.D. Plaintiff questioned paternity. Plaintiff thought that Ms. Daniel had financial motives to name him as the father of her child and chose not to pursue the matter.

MCCS, specifically Defendant McGuire, contacted Plaintiff again in December 2017 to see if he had taken steps to establish paternity and to inform him of a status hearing before Magistrate Judge Paula Durden of the Common Pleas Court of Montgomery County, Juvenile

3

Division that was to take place on January 23, 2018. Doc. 1; Doc. 16-3, Exhibit C ¶ 5. Plaintiff stated that he had not taken steps to establish paternity as he did not want to pay child support. Doc. 16-3, Exhibit C, ¶5.

Defendant Lacey Maguire was assigned as the ongoing caseworker for Ms. Daniel and the minor N.D. She did not succeed in contacting Plaintiff until December 2017 when she informed Plaintiff that there would be a hearing on January 23, 2018, to determine further disposition of the child. Plaintiff requested leave from his employer to attend the hearing. At that hearing Plaintiff was provided information regarding the process to establish whether he was the biological father of N.D. That same day, Plaintiff completed the necessary Child Support Enforcement Agency application and paperwork and submitted himself to the paternity test.

Defendant McGuire attempted to form a case plan with Plaintiff in February 2018, however, Plaintiff refused to do so until he received the results of the paternity test. Doc. 31; Doc. 16-3, Exhibit C ¶ 5, Doc. 16-2, Exhibit B at 6. Instead, Plaintiff asked for all communications from Defendants to cease until paternity was established so as to not cause unnecessary intrusion in his home and with his wife. Nevertheless, Defendant Vonderwall spoke with Plaintiff in March 2018, during which Plaintiff stated that it took him a year to establish paternity both because of his out-of-state employment as well as marital issues after his wife was informed that he had a child out of wedlock. Doc. 16-3, Exhibit C ¶ 6; Doc. 16-2, Exhibit B at 3.

On April 13, 2018, paternity was established, the results filed with the courts. On May 22, 2018, Plaintiff Darden received notice that he was the biological father of N.D. Plaintiff did not respond until a week later when he informed Defendant McGuire that he received an out-of-

4

state job offer and could only be available to visit with N.D. on Saturdays and Sundays. Doc. 16-3, Exhibit C.

MCCS was not able to conduct visitations on weekends, so Defendant McGuire offered to adjust her schedule to accommodate Monday mornings or Friday evenings; made a referral to Erma's House Family Visitation Center, a facility that exists to provide a space for non-custodial parents to visit their children; and offered visitation through Defendants Jill and Nick Kingston, who were fostering N.D. Doc. 16-3, Exhibit C ¶ 8. Plaintiff started the process of trying to establish visitation and ultimately custody of N.D. He engaged in home visits with MCCS and meetings concerning visitation and a case plan concerning N.D. Doc. 25, Exhibit 4.

Plaintiff was subjected to case plan requirements including a mental health evaluation, ongoing drug tests and supervised visitations with N.D. that did not take into account his out-of-state work. Plaintiff completed the alcohol and drug assessment and submitted to urine screens and underwent a mental health evaluation. Plaintiff contends Defendant Kingston, knowing that Plaintiff Darden was still working out of state, made it difficult for Plaintiff Darden to schedule visitation with N.D. and did not permit him access to see his child in the evenings or weekends to accommodate his out-of-town work schedule.

On May 25, 2018, Defendant McGuire conducted a home visit at Plaintiff's residence in Dayton, Ohio. During the visit, Defendant McGuire noted that the house was cluttered and needed to be "baby proofed" for N.D.'s safety. Doc. 16-3, Exhibit C ¶ 9; Doc. 16-2, Exhibit B at 15. Defendant Vonderwall also visited Plaintiff's home on a separate occasion and noted that the home was cluttered and N.D.'s room was used for storage. Plaintiff's wife also informed Defendant Vonderwall that she was not willing to care for N.D. Doc. 16-3, Exhibit C ¶ 11. Plaintiff, during

5

the process of attempting to get custody of N.D., never decluttered or baby proofed his home as requested. Doc. 16-1, Exhibit A at 3; Doc. 16-2, Exhibit B at 15.

On July 13, 2018, Plaintiff had his first visit with N.D. at MCCS. During the visit, Plaintiff requested that Defendant Jill Kingston stay for the visit, which she did. Doc. 16-3, Exhibit C ¶ 10; Doc. 16-2, Exhibit B at 4. Plaintiff spoke more with Defendants Kingston and McGuire about his life than interact with N.D. Doc. 16-2, Exhibit B at 4. That same day Plaintiff filed for custody of N.D.

Within five days of Plaintiff's Complaint for Custody on July 18, 2018, the MCCS Defendants, in cooperation with Defendants Vonderwell and Kingston, filed for the commitment of N.D. to the permanent custody of MCCS. (See Doc. 16-2, Exhibit B). An initial hearing on custody was set for August 6, 2018, and a Permanent Custody hearing for October 25, 2018. Between August 6, 2018, and October 25, 2018, Plaintiff again made attempts to visit with his son and allegedly was hindered from doing so. Plaintiff did have three more visits with N.D. Doc. 16-3, Exhibit C ¶12; Doc. 16-2, Exhibit B at 4. However, Plaintiff again spoke about his personal life during the visits, including how this situation has caused a strain in his marriage. He did not ask questions about N.D. or his care, nor did he go out of his way to attempt to interact with N.D. Doc. 16-3, Exhibit C ¶ 19; Exhibit B at 4, 6.

Throughout this process, Plaintiff told MCCS, Defendant McGuire, and Defendant Vonderwall that if he gains custody of N.D. that he is going to have his wife assist him with N.D.'s care. Doc. 16-2, Exhibit B at 4-6. Plaintiff was asked to sign a release for his wife several times, as she was supposedly going to assist with N.D., however Plaintiff failed to ever produce this document. Doc. 16-1, Exhibit A at 3; Doc. 16-2, Exhibit B at 6.

6

Because MCCS and the Kingstons allegedly were not accommodating to Plaintiff's schedule, Plaintiff requested to move visitations to Erma's House to have more favorable visitation options. This was denied. Plaintiff then asked the MCCS Defendants to consider his mother, Elizabeth Darden and Letitia Darden, Plaintiff Darden's daughter, as alternative placements for his son. However, MCCS Defendants did not complete the placement investigation before the October 25, 2018, hearing.

At the custody hearing on October 25, 2018, all of the Defendants, their counsel, as well as counsel for the Kingstons attended the hearing. Plaintiff's wife was not present for the hearing as she had "other plans," although she was asked to be present to testify. Doc. 16-2, Exhibit B at 7. At the hearing, all of the MCCS Defendants, Vonderwell and Kingston testified before the court. Plaintiff contends they mischaracterized the facts and exaggerated the circumstances to appear as though he had not met the requirements of the case plan to justify permanent custody being granted to MCCS.

Plaintiff further complains that the family court judge's wife was the court reporter for the hearing, though he does not explain the prejudice that accrued from this. Plaintiff complains that the Court permitted hearsay evidence regarding comments Plaintiff's wife's made and gave deference to MCCS defendants, Vonderwell, even permitting Defendant Jill Kingston to testify as to her opinion of Plaintiff Darden's character and actions.

Magistrate Durden ultimately issued a decision granting permanent custody to MCCS. Doc. 16-2, Exhibit B at 20-21; Doc. 16-3, Exhibit C ¶ 13. Plaintiff filed objections to the Magistrate's decision. These objections were overruled and Defendant Capizzi of the Common

Pleas Court of Montgomery County, Juvenile Division granted permanent custody to MCCS on

January 10, 2020. Id. In his 23 page decision, Juvenile Court Judge Anthony Capizzi noted:

> The Court would be remiss if it did not note that [Plaintiff] felt
> poorly treated throughout this process. [Plaintiff] feels that Ms.
> Kingston, who is the CEO of Brigid's Path a recovery center for
> mothers with newborn infants, received preferential treatment over
> him based upon her position and financial benefits he believes is
> received by MCCS through Brigid's Path. Additionally, [Plaintiff]
> also feels that he received unfair treatment from Erma's House.
> There was no evidence presented to support either of these claims.

Id. at 18.

The Court granted permanent custody of N.D. to MCCS. Plaintiff alleges that Defendants

Jill and Nick Kingston, Good, and the family court judge worked together to bring Brigid's Path

into existence. Brigid's Path, a company formed as a newborn recovery center to improve the

health of newborn babies and mothers impacted by addiction, opened its doors in December 2017.

Doc. 1 ¶ 53. A cornerstone of Brigid's Path was not only care for the infants but also to equip the

addicted mothers with the tools necessary to be reunited with their children. Brigid's Path was

considered the state's first crisis care nursery for drug exposed newborns.

Brigid's Path accepted its first baby on December 29, 2017. Throughout 2018 Brigid's Path

took in 33 infants all directly through MCCS. Jill and Nick Kingston, with assistance from MCCS

defendants, filed a petition with the Montgomery County Probate Court to adopt N.D., and their

petition for adoption was expedited and adoption was granted.

On September 15, 2023, Plaintiff filed a complaint asserting a variety of claims. Count I

asserts Defendants Jewel Good (Director of MCCS), Adam Mash (a case worker supervisor at

MCCS), Lacey Maguire (A case worker for MCCS), Lisa Bruder (Assistant Prosecuting Attorney

in the Montgomery County Child Protection Unit) and Marcy Vonderwell (a Greene County

Assistant Prosecutor who was *Guardian ad Litem* for N.D.) who through their actions, each defendant, utilizing their specific role, under the color of law pursuant to 42 U.S.C. § 1983, acted within the Juvenile Court and within Children Services system to circumvent and break known procedures, rules and laws to insure that Plaintiff Darden's parental rights would be terminated for the benefit of Defendants ODJFS, MCCS, Defendants Kingston and BP.

Count II asserts claims damages under Title VI of the Civil Rights Act § 1964 for injuries set forth above against Defendants ODJFS, MCCS, Good, Mash, Maguire, Bruder and Vonderwell who, through "the inherent systemic biases within the county agency and court system discriminated against Plaintiff Darden because of his race and sex as an African American man and father and gave preferential treatment to a Caucasian couple, a couple who had no parental rights as foster parents over Plaintiff Darden, the biological father of N.D." Doc. 1, PageID 18.

Count III asserts a violation of the Due Process Clause of the Fourteenth Amendment claiming that it "requires that severance in the parent-child relationship caused by the state occur only with rigorous protections for individual liberty interests at stake." Plaintiff believes Defendants Good, Mash, Maguire, Bruder and Vonderwell acted outside of the scope of their work by "engaging in conduct that went beyond all statutorily and procedurally established rules and regulations to engage in a nefarious scheme to benefit [the] Kingstons, in complete abrogation of their responsibility to N.D. and Plaintiff Darden, and their tortuous conduct who through their concerted actions, each defendant, utilizing their specific roles circumvented the recognized policies and procedures that are required to be provided to parents before their parental rights are removed."

Count IV charges Defendants Good, Mash, Maguire, Bruder, Vonderwell, Jill and Nick Kingston interfered with Plaintiff's parental rights in order to ensure that Defendants Jill and Nick Kingston could adopt N.D., once Montgomery County gained permanent custody of N.D. through agreement with Juvenile Court. Plaintiff alleges these Defendants failed to follow their own policies and procedures throughout the court proceedings in order to establish their goal for MCCS to gain custody of N.D. so that Jill and Nick Kingston could adopt N.D. 76. Plaintiff additionally asserts that Judge Capizzi had an obligation to recuse himself under the ethical and judicial canons set forth with the Supreme Court of Ohio.

Count V charges ODJFS, MCBC, MCCS, Good, Mash, Maguire, Schutzman, Bruder, Vonderwell, and the Kingstons with Intentional Infliction of Emotional Distress by "engaging in a malicious plot to strip [Plaintiff] of his parental rights for the sole purpose to ensure that Jill and Nick Kingston could adopt his child." Doc. 1, PageID 21. Count VI asserts loss of consortium as Plaintiff has "lost his fundamental right of companionship and bonding with his son and the ability directly impact and shape his son's life." Id. Count VII seeks punitive damages, asserting Defendants' actions were "grossly negligent, done with a gross disregard to the safety of Plaintiff Darden and his son." Id. There is an additional allegation that "Defendants acted with specific intent to harm, and fraud was their ultimate motivation for their actions." Id.

The next claim (mislabeled "Count VII" and for the purposes of this decision will be referred to as "Count VIII"), is a 42 U.S.C. § 1983 claim against the Montgomery County Board of Commission, Ohio Department of Jobs and Family Services, Montgomery County Jobs and Services asserting a policy or custom of "MCCS under the direction and oversight by Defendants ODJFS and MCBC to fail to exercise reasonable care in...the hiring of its agency directors, case

managers and workers including Defendants Goode Maguire, Mash, Schutzman and Bruder thereby failing to adequately prevent constitutional violations on the part of its employees." Id. at PageID 23. The last claim (labelled "Count VIII," but due to the mislabeling of the previous claim will now, for the purpose of this decision, be labeled "Count IX") asserts *respondeat superior* liability against the Montgomery County Board of Commission, the Ohio Department of Jobs and Family Services, Montgomery County Jobs and Services Division for the actions of Good, Mash, Maguire, Schutzman, Bruder, and Vonderwell.

## II.     Standard

The standard of review for a judgment on the pleadings is the same as that for a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6). *EEOC v. J.H. Routh Packing Co.,* 246 F.3d 850, 851 (6th Cir. 2001) (citation omitted). On a motion to dismiss, a court considering an affirmative defense of *res judicata* may take judicial notice of public records including judicial proceedings. *Automated Solutions Co. v. Paragon Data Systems, Inc. .,* 2008 WL 2404972, *6 (N.D. Ohio 2008), citing *Day v. Moscow,* 955 F.2d 807, 811 (2nd Cir.1992); *Southern Cross Overseas Agencies, Inc. v. Wah Kwong Shipping Group, Ltd.,* 181 F.3d 410, 426–427 (3d Cir.1999); 2 Moore's Federal Practice § 12.34; *Rushford v. Firstar Bank, N.A.,* 50 Fed. App'x 202, 205 (6th Cir. 2002).

To survive a motion to dismiss under Rule 12(b)(6), a plaintiff must first comply with Rule 8(a)(2), which requires "'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the ... claim is and the grounds upon which it rests.'" *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 545, 127 S. Ct. 1955 (2007), quoting *Conley v. Gibson,* 355 U.S. 41, 47, 78 S. Ct. 99 (1957). A plaintiff is also

obliged "to provide the grounds of his entitlement to relief," which "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Ass'n of Cleveland Fire Fighters v. City of Cleveland,* 502 F.3d 545, 548 (6th Cir. 2007), quoting *Twombly,* 550 U.S. at 555 (citations and internal quotation marks omitted). And, while a complaint need not contain "detailed" factual allegations, its "[f]actual allegations must be enough to raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true." *Id.,* quoting *Twombly,* 550 U.S. at 555 (citation and internal quotation marks omitted); *see also League of United Latin Am. Citizens v. Bredesen,* 500 F.3d 523, 527 (6th Cir. 2007) (emphasis in original) (The factual allegations in a complaint need not be detailed but they "must do more than create speculation or suspicion of a legally cognizable cause of action; they must show *entitlement* to relief."). Although Rule 12(c) states that if "matters outside the pleadings are presented to and not excluded by the court, the motion shall be treated as one for summary judgment," courts have found that when the issue of *res judicata* is presented, it is "a purely legal issue" that can be considered in the context of a motion for judgment on the pleadings. *Booker v. City of Beachwood,* 2007 WL 1039155 (N.D. Ohio), citing *Hutcherson v. Lauderdale County, TN.,* 326 F.3d 747, 756 (6th Cir. 2003).

## III.   Analysis

Before the Court are a variety of motions from the various defendants in this case. Taken together, the require dismissal.

## A.   Motion of Montgomery County Defendants

Defendants Montgomery County Board of County Commissioners, Montgomery County Jobs and Family Services, Jewell Good, Lacey Maguire, Adam Mash, Thomas Schutzman, and

Lisa Bruder moved the Court to dismiss the Plaintiff's claims pursuant to Fed. R. Civ. P. 12(B)(6), Doc. 23, asserting Plaintiff failed to state a claim on which relief can be granted. The Court will analyze each count as presented in the motion.

**1.   42 U.S.C. § 1983 (Counts I and VIII)**

Title 42 U.S.C. § 1983 allows a cause of action against "[e]very person who, under color of any statute . . . of any State . . . subjects, or causes to be subjected, any citizen . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws . . ." 42 U.S.C. § 1983. Plaintiff's claim must show: (1) he was deprived of a right secured by the Constitution or laws of the United States and (2) such deprivation occurred under color of state law. *Harcz v. Boucher*, 763 Fed. App'x 536, 540 (6th Cir. 2019) (quoting *Tahfs v. Proctor*, 316 F.3d 584, 590 (6th Cir. 2003)). Count I merely alleges that the Good, Mash, Maguire, Schutzman, and Bruder, "utilizing their specific role, under the color of law pursuant to 42 U.S.C. § 1983, acted within the Juvenile Court and Children Services system to circumvent and break down known procedures, rules and laws to insure that Plaintiff Darden's parental rights would be terminated." Doc. 1, PageID 17.

Plaintiff does not allege which specific constitutional protections or laws were violated nor how they occurred under color of state law. Count VIII against the BCC and MCCS alleges a § 1983 claim on the bases of failure to train or failure to screen while hiring. To make such claims, the Plaintiff must also show the municipality's failure to either properly screen or train resulted in a constitutional violation that was highly predictable at the time of the failure. See *Bd. of Cty. Comm'rs v. Brown*, 520 U.S. 397, 410 (1997). Count VIII conclusorily states "the actions taken within this matter . . . exhibits deliberate indifference to the constitutional rights of the people of

13

Montgomery County, the treatment which caused the violation of Plaintiff Darden's rights." Doc. 1, PageID 23. This legal conclusion lacks any supporting factual allegations. Similarly, Plaintiff vaguely alleges inadequate training and hiring policies without identifying any particular deficient practice or policy. Id. at PageID 23–24. Count VIII fails to adequately articulate which constitutional right Plaintiff was denied. Plaintiff also fails to allege it was highly predictable Defendant's failure to properly train and hire would lead to a constitutional violation.

Plaintiff's response does not defend these claims. Counts I and VIII will be dismissed for failure to state a claim upon which relief can be granted. Compare *Stafford v. City of Argo*, 514 F. Supp. 3d 1353, 1365–66 (N.D. Ala. 2021) ("The plaintiffs' response to the defendants' renewed motion to dismiss does nothing to clarify the issue, failing to address their due process claim(s) beyond merely referencing "due process of law" and the "Fourteenth Amendment," make any argument with respect to their due process claim(s), or cite any authority that would demonstrate the facts alleged in their amended complaint, taken as true, give rise to the violation of clearly established procedural or substantive due process rights.")

## 2. Title VI of the Civil Rights Act § 1964 (Count II)

Title VI makes it unlawful to "be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance" based on one's race, color, or national origin. 42 U.S.C. § 2000d. Plaintiff must allege intentional discrimination, not disparate impact. *Alexander v. Sandoval*, 532 U.S. 275, 280 (2001). Plaintiff must also show Defendant receives federal funding. *Torrespico v. Columbia College*, 97-cv-8881, 1998 WL 703450, at *16 (N.D. Ill. Sept. 30, 1998).

As Movant notes, Plaintiff fails to allege any Defendant receives federal financial assistance. Also, Plaintiff fails to allege he was treated less favorably than similarly situated individuals. Plaintiff merely states "each defendant, utilizing their specific roles and in deference to the inherent systemic biases within the county agency and court system discriminated against Plaintiff Darden because of his race and sex as an African-American man." Doc. 1, PageID 18. Plaintiff states "[Defendants acted] in deference to the inherent systemic biases within the county agency and court system." Id. This statement would indicate any alleged discrimination was inherent and systemic, not intentional. Plaintiff's complaint falls short of alleging a proper Title VI claim and will be dismissed.

### 3. Fourteenth Amendment – Due Process Clause Violations (Count III)

Count III alleges a cause of action against Good, Mash, Maguire, Schutzman, and Bruder directly under the Due Process Clause of the Fourteenth Amendment, as opposed to 42 U.S.C. § 1983. A plaintiff may only pursue remedies against state officials under 42 U.S.C. § 1983. *Thomas v. Shipka*, 818 F.2d 496, 499 (6th Cir. 1987). Count III does not state a cognizable claim and will be dismissed.

### 4. Civil Conspiracy/Tortious Interference with Parental Rights (Count IV)

Ohio has defined civil conspiracy as "a malicious combination of two or more persons to injure another in person or property, in a way not competent for one alone, resulting in actual damages.'" *Williams v. Aetna Fin. Co.*, 700 N.E.2d 859, 868 (Ohio 1998) (internal citation omitted). A plaintiff must have an underlying tort claim in order to have a successful civil conspiracy claim. Id.

Plaintiff's response asserts that tortious interference with the parental and custodial rights is the underlying unlawful act supporting the civil conspiracy. Doc. 25, PageID 536-67. A civil action may be brought by a parent where the deprivation of custody of their minor child results from "a child stealing crime." Ohio Rev. Code § 2307.50(B). "Child stealing crime" includes Ohio Revised Code § 2919.23, which prohibits a person, that knows he or she is without privilege to do so, from keeping a child under the age of eighteen from his or her parents.

Defendants are not "without privilege":

> When an aggrieved parent sues county caseworkers for their conduct during child custody proceedings culminating in the deprivation of custody by the juvenile court, however, responsibility for procedural deficiencies lies with the juvenile court, not the caseworkers. *Pittman*, 640 F.3d at 730. When caseworkers give testimony or otherwise participate as legal advocates in custody hearings, quasi-prosecutorial immunity shields them from liability. Id. at 724. This immunity, which is absolute and applies in the same way as prosecutorial immunity, shields caseworkers from damages even when they knowingly make false or defamatory statements, id. at 725, or when their conduct is "unquestionably illegal or improper," [*Cady v. Arenac Cnty.*, 574 F.3d 334, 340 (6th Cir. 2009)]. All that matters is that the alleged illegal conduct stems from the caseworker's "capacity as a legal advocate," such as testifying in juvenile court. *Pittman*, 640 F.3d at 724.

*Arsan v. Keller*, 784 F. App'x 900, 910 (6th Cir. 2019). Even if this were not the case, Plaintiff would be obliged to first bring this claim in the Ohio Court of Claims. Ohio Rev. Code 2743.02(F). Count IV cannot succeed and will be dismissed for failure to state a claim upon which relief can be granted.

## 5. Intentional Infliction of Emotional Distress (Count V)

A successful intentional infliction of emotional distress claim requires a Defendant to cause serious emotional distress to another through the Defendant's extreme and outrageous conduct.

16

*Reamsnyder v. Jaskolski*, 462 N.E.2d 392, 394 (Ohio 1984). With respect to what constitutes extreme and outrageous conduct, the conduct must be "'so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community.'" *Yeager v. Local Union 20, Teamsters*, 453 N.E.2d 666, 671 (Ohio 1983) (internal citation omitted).

Plaintiff states "Defendants intentionally caused severe emotional distress to Plaintiff Darden by their willful, wanton, extremely reckless and indifferent conduct . . . including . . . a malicious plot to strip him of his parental rights." Doc. 1, PageID 21. The Complaint states the bare elements of an intentional infliction of emotional distress claim but fails to include any supporting allegations. The Complaint does little more than state the elements of an intentional infliction of emotional distress claim. "Such bare allegations [do] not survive under *Twombly*." *Lambert v. Angel Oak Funding, LLC*, No. 1-13-cv-3484, 2015 WL 13777926, at \*7 (N.D. Ga. Mar. 5, 2015). Count V will be dismissed for failure to state a claim upon which relief can be granted.

### 6. Loss of Consortium (Count VI)

Count VI of Plaintiff's complaint seeks compensation for loss of consortium. The Supreme Court of Ohio has held filial loss of consortium is an element of damages in a parent's derivative action against a third-party who has intentionally or negligently caused physical injury to a parent's minor child. *Gallimore v. Children's Hosp. Med. Ctr.*, 617 N.E.2d 1052 (Ohio 1993). A derivative action is one which clearly stems from a single accident or event, furthermore, "the derivative action would not exist but for the primary action." *Tomlinson v. Skoinik*, 540 N.E.2d 716, 720 (Ohio 1989) (quoting *Dues v. Hodge*, 521 N.E.2d 789, 792 (Ohio 1988)).

Plaintiff's complaint fails to allege N.D. has any cause of action. Thus, there is no primary action which means there can be no derivative action. Moreover, Plaintiff's complaint fails to allege N.D. has suffered any kind of physical injury. Finally, Ohio has classified filial loss of consortium as an "element of damages," not an independent cause of action. Count VI does not state a claim upon which relief may be granted and will be dismissed.

## 7. Punitive Damages (Count VII)

Count VII of Plaintiff's complaint seeks punitive damages. "No civil cause of action in this state may be maintained simply for punitive damages." *Niskanen v. Giant Eagle, Inc*., 912 N.E.2d 595, 599 (Ohio 2009) (quoting *Bishop v. Gardina*, 485 N.E.2d 704 (Ohio 1985)). Count VII asserts "Plaintiff Darden is entitled to punitive damages" but includes no accompanying cause of action. Doc. 1, PageID 22–23. Count VII will be dismissed for failure to state a claim upon which relief can be granted.

## 8. *Respondeat Superior* (Count IX)

Count IX alleges that the Board of County Commissioners and Montgomery County Jobs and Family Services are liable under a theory of *respondeat superior*. It is well-established that § 1983 liability may not be founded on *respondeat superior*. *Monell v. Department of Social Services*, 436 U.S. 658, 694 (1978) ("a local government may not be sued under § 1983 for an injury inflicted solely by its employees or agents").

Plaintiff alleges, in part, that Good, Mash, Maguire, Schutzman, and Bruder all "engaged in conduct within their employment that manifested a bias and bias and deference that benefited the state through continued preferential financial exchange between Defendants Kingston, BP and MCCS." Doc.1, PageID 25. The conduct of any employee of the BCC or MCCS is not a proper

18

basis upon which to assert liability against these municipal defendants. Count IX will be dismissed for failure to state a claim. Thus, Defendants' Montgomery County Board of County Commissioners, Montgomery County Jobs and Family Services, Jewell Good, Lacey Maguire, Adam Mash, Thomas Schutzman, and Lisa Bruder's motion to dismiss the Plaintiff's claims pursuant to Fed. R. Civ. P. 12(B)(6), Doc. 23, will be granted.

## B. ODJFS Claim to Sovereign Immunity

The Ohio Department of Jobs and Family Services has filed a Motion to Dismiss pursuant to Fed. R. Civ. P. 12(b)(6). Doc. 17. Although "the proper vehicle to assert Eleventh Amendment immunity is Federal Rule of Civil Procedure 12(b)(1)," *Machisa Design Servs. v. Bd. of Educ.*, No. 2:12-cv-838, 2013 WL 80273, 2013 U.S. Dist. LEXIS 2294, at *5 (S.D. Ohio Jan. 7, 2013), "a dismissal pursuant to an Eleventh Amendment defense may be granted pursuant to a 12(b)(6) motion" as well. *Zukowski v. Germain*, No. 2:09-cv-662, 2010 U.S. Dist. LEXIS 69410, at *12 (S.D. Ohio Jun. 18, 2010).

The Eleventh Amendment generally proscribes suit against the states in federal court. See U.S. Const. amend. XI; see also, e.g., *Mixon v. Ohio*, 193 F.3d 389, 396–97 (6th Cir. 1999). More specifically, the Eleventh Amendment deprives federal courts of subject-matter jurisdiction when a citizen sues his own State unless the State waives or Congress abrogates that protection. *Russell v. Lundergan-Grimes*, 784 F.3d 1037, 1046 (6th Cir. 2015). The applicability of the Eleventh Amendment is jurisdictional. *Wilkins ex rel. United States v. Ohio*, 885 F. Supp. 1055, 1067 (S.D. Ohio 1995); *Koukios v. Ganson*, No. 99-4060, 2000 U.S. App. LEXIS 21040, at *5 (6th Cir. Aug. 11, 2000) (affirming dismissal under Fed. R. Civ. P. 12(b)(1) based on Eleventh Amendment immunity).

The Eleventh Amendment prohibits federal courts from granting money judgments or injunctive relief against the State and its agencies. *Pennhurst State Sch. and Hosp. v. Halderman*, 465 U.S. 89 (1984); *Alabama v. Pugh*, 438 U.S. 781 (1978). Similarly, suits against the "state" are prohibited in federal court whether for injunctive, declaratory, or monetary relief. See *Lawson v. Shelby Cnty.*, 211 F.3d 331, 335 (6th Cir. 2000); *Whittington v. Milby*, 928 F.2d 188, 193 (6th Cir. 1991) ("[A] state agency may not be sued in federal court, regardless of the relief sought, unless the state has waived its sovereign immunity or Congress has overridden it."); see *also NAECIS Outreach v. Vilsak,* No. 2:14-cv-161, 2014 WL 6810781, 2014 U.S. Dist. LEXIS 167424, at *7 (S.D. Ohio Dec. 3, 2014) ("Plaintiffs' suit—a federal action alleged against an agency of the state—is exactly the type of case sovereign immunity precludes.").

ODJFS is a department of the State of Ohio. Ohio Rev. Code § 121.02(H); see also *Mathis v. Ohio Dep't of Job and Family Servs.*, No. 2:11-cv-395, 2011 WL 5075824, 2011 U.S. Dist. LEXIS 123436, at *8 (Oct. 25, 2011) (finding that ODJFS is a state agency). The Complaint is seeking monetary and injunctive relief against ODJFS. Doc. 1, Compl., at PageID 25, Prayer for Relief. Because Plaintiff has sued a state agency in federal court, the Eleventh Amendment deprives this Court of jurisdiction of the claims against the state agencies, and this Court must dismiss.

Moreover, ODJFS cannot be sued pursuant to 42 U.S.C. § 1983. In Count VII of the Complaint, Plaintiff alleges that ODJFS violated his "constitutional rights" through its policies and customs, and he brings this claim pursuant to 42 U.S.C. § 1983. Doc. 1, Compl., at ¶ 101, PageID 24; see also ¶¶ 95–100, PageID 23–24. Although § 1983 "provides a federal forum to remedy many deprivations of civil liberties," it "does not provide a federal forum for litigants who seek a

remedy against a State for alleged deprivations of civil liberties." See *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 66 (1989). This is because the Eleventh Amendment bars such suits unless the State has waived, or Congress has abrogated, its sovereign immunity. Id. Consequently, a state agency is not a "person" subject to suit under § 1983. *Rodgers v. Mich. Dep't of Corr.*, 29 Fed Appx. 259, 260 (6th Cir. 2002).

## C. *Res Judicata* with regard Brigid's Path and Jill Kingston

Defendant Brigid's Path and its CEO, Jill Kingston, collectively "Brigid's Path," assert, *inter alia*, that the doctrine of *res judicata* bars Counts I - VI of Plaintiff's Complaint. Doc. 13, 16.

It is a matter of public policy that individuals who have brought claims be bound by the result of the contest and "that matters once tried shall be considered forever settled as between the parties." *Federated Department Stores, Inc. v. Mottie*, 452 U.S. 394, at 401 (1981) quoting *Baldwin v. Traveling Men's Assn.*, 283 U.S. 522, 525 (1931). Federal courts must give the same preclusive effect to a state-court judgment as that judgment received in the rendering state. *Hinton v. Teodosio*, 2012 U.S. Dist. LEXIS 154795, *15-16; 28 U.S.C. § 1738; *Abbott v. Michigan*, 474 F.3d 324, 330 (6th Cir. 2007); *Young v. Twp. of Green Oak*, 471 F.3d 674, 680 (6th Cir. 2006). The Court must apply the law of preclusion of the state in which the prior judgment was rendered in order to determine the preclusive effect that judgment would have on the present federal action. Id.; *Migra v. Warren City School District Board of Educ.*, 465 U.S. 75, 81, 104 S. Ct. 892 (1984).

The Ohio Supreme Court adopted the standard for *res judicata* set forth in the Restatement of Judgment (2d), "A valid, final judgment rendered on the merits bars all subsequent actions based upon any claim arising out of the transaction or occurrence that was the subject matter of the previous action." *Grava v. Parkman Township*, 73 Ohio St. 3d 379 (1995). "Transaction" is

defined as a "common nucleus of operative fact." *Grava*, at 382, quoting Restatement (2d) of Judgments § 24, Comment b.

Under claim preclusion, *res judicata* bars all claims that have been or could have been brought in a prior action. *Brown v. City of Dayton*, 89 Ohio St. 3d 245, 248, 2000 Ohio 148, 730 N.E.2d 958 (2000). A plaintiff who pursues an administrative appeal in Ohio need not limit himself to administrative claims but may only seek relief under both § 2506 and federal statutory law, if he follows the proper procedures. *Lavon Moore v. Hiram Twp.*, 988 F.3d 353, 362, 2021 U.S. App. LEXIS 4844, *18-19, 2021 FED App. 0041P (6th Cir.) (quoting *Carroll v. City of Cleveland*, 522 F. App'x 299, 305-6 (6th Cir. 9 2013)). A plaintiff is required to advance all theories for every ground of relief in the first action or be forever barred from asserting it. *Grava* at 379.

Historically within the Sixth Circuit, collateral attacks on state court judgments involving domestic relations are excluded from consideration by federal courts. *Stephens v. Hayes*, 374 Fed. Appx. 620, 623, 2010 U.S. App. LEXIS 7533, *4, 2010 FED App. 0226N (6th Cir. 2010*); Castorr v. Brundage*, 674 F.2d 531, 535-36 (6th Cir. 1982). "The whole subject of the domestic relations of husband and wife, parent and child, belongs to the laws of the states, and not to the laws of the United States." Id. (quoting *In re Burrus*, 136 U.S. 586, 593-94, 10 S. Ct. 850, 34 L. Ed. 500 (1890)).

Claim preclusion in Ohio requires showing the following factors: "(1) a prior final, valid decision on the merits by a court of competent jurisdiction; (2) a second action involving the same parties, or their privies, as the first; (3) a second action raising claims that were or could have been litigated in the first action; and (4) a second action arising out of the transaction or occurrence that was the subject matter of the previous action." *Lavon Moore*, 988 F.3d at 357 (quoting *Ohio ex*

*rel. Boggs v. City of Cleveland*, 655 F.3d 516, 520 (6th Cir. 2011). Under Ohio law, privity is "somewhat amorphous." Id. at 358-359 (quoting *Brown* 730 N.E.2d at 962). Privity is established where there is a mutuality of interest between two parties, to include an identity of desired result. Id.; *Brown*, 730 N.E.2d at 962. Mutuality of interest exists where "the person taking advantage of the judgment would have been bound by it had the result been the opposite." Id. (quoting *O'Nesti v. DeBartolo Rlty. Corp.*, 113 Ohio St. 3d 59, 2007 Ohio 1102, 862 N.E.2d 803, 806 (Ohio 2007)). Privity may also be established by "an interest in the result of and active participation in the original lawsuit." *Abdulsalaam v. Franklin County Bd. of 10 Commis*, 637 F. Supp. 2d 561, 586, 2009 U.S. Dist. LEXIS 63296, *54-55; (quoting *O'Nesti*, 862 N.E.2d at 806).

There was a final judgment on the merits in the case at hand: Magistrate Durden issued a Decision, the Common Pleas Court of Montgomery County, Juvenile Division Judge Anthony Capizzi reviewed the Decision and issued a Final Appealable Order; the case was reviewed by the Court of Appeals of Ohio, Second Appellate District and Plaintiff's assignments of error were overruled and the judgment of the juvenile court was affirmed; and the Supreme Court of Ohio declined to exercise jurisdiction over the matter upon Plaintiff's request for further review. Although Defendant Brigid's Path was not a named party to the original lawsuit, *In Re N.D.*, it is a privy to the parties in the lawsuit. Brigid's Path, through CEO Jill Kingston, would have been bound to the judgment had custody been granted to Plaintiff — an adverse ruling would have required Jill Kingston to forgo custody of their foster child (now adoptive child). Further, Jill Kingston testified, actively participating, in the custody hearing before Magistrate Durden held on October 25, 2018.

Moreover, the current action is one which either was or could have been litigated in the original action. In Judge Anthony Capizzi's 23-page Final Appealable Order, he states:

> [t]he Court would be remiss if it did not note that Father felt poorly treated throughout this process. Father feels that Mrs. Kingston, who is the CEO of Brigid's Path a recovery center for mothers with newborn infants, received preferential treatment over him based upon her position and financial benefits he believes is received by MCCS through Brigid's Path. ... There was no evidence presented to support either of these claims.

Doc. 16-2, Exhibit B at 18. The Common Pleas Court of Montgomery County, Juvenile Division Judge Anthony Capizzi directly addressed the fact that there was no evidence to support Plaintiff's contention that he was being unfairly treated after the issue was brought up to the Court by Plaintiff.

Plaintiff's constitutional claims (Counts I - III) and tort claims (Counts IV - VI) could have been previous litigated in the Ohio State Court case *In Re N.D.* See *Lavon Moore*, 988 F.3d at 362. However, Plaintiff failed to raise any of these claims on appeal. Judge Capizzi went out of his way in his Final Appealable Order to address the fact that Plaintiff felt as though he was mistreated throughout the custody process. Doc. 16-2, Exhibit B at 18. Plaintiff failed to raise these concerns on appeal.

Plaintiff has exhausted his judicial remedies in Ohio State Court and now improperly seeks to use the federal forum to assert arguments that could have been raised but were not as well as to re-litigate the custody proceedings that have already been reviewed by the Supreme Court of Ohio. Finally, this action arises "out of the transaction or occurrence that was the subject matter of the previous action." Id. at 357. The entirety of this lawsuit is based on the facts at issue in *In Re N.D.,* the result of which ultimately granted permanent custody of N.D. to the State. In this lawsuit,

24

Plaintiff re-alleges his version of the facts surrounding his attempt to gain custody of N.D. and is attempting to have this Court invalidate the Decision of the Common Pleas Court of Montgomery County, Juvenile Division, a decision that was reviewed by the Supreme Court of Ohio, which declined jurisdiction of the matter, thus supporting the Court of Appeals decision.

Plaintiff's claims in Counts I-VI in this lawsuit stem from his disagreement with the judgments rendered by the Ohio State Courts. They are an inappropriate collateral attack on valid Ohio State Court judgments regarding domestic relations and child custody of N.D. Accordingly, Counts I-VI of the Complaint are barred by the doctrine of *res judicata*.

### D. Motion of Montgomery County

Defendants Montgomery County Board of County Commissioners ("MCBC"), Montgomery County Jobs and Family Services ("MCJFS"), Jewell Good, Lacey Maguire, Adam Mash, Thomas Schutzman, and Lisa Bruder have moved the Court to dismiss the Plaintiff's claims against them under Fed. R. Civ. P. 12(B)(6). Doc. 23. Plaintiff asserts a 42 U.S.C. § 1983 claim against the MCBC, Ohio Department of Jobs and Family Services, and MCJFS asserting a policy or custom of "MCCS under the direction and oversight by Defendants OJFS and MCBC to fail to exercise reasonable care in…the hiring of its agency directors, case managers and workers including Defendants Goode Maguire, Mash, Schutzman and Bruder thereby failing to adequately prevent constitutional violations on the part of its employees." Id. at PageID 23. The last claim asserts *respondeat superior* liability against the Montgomery County Board of Commission, the Ohio Department of Jobs and Family Services, Montgomery County Jobs and Services Division for the actions of Good, Mash, Maguire, Schutzman, Bruder, and Vonderwell.

Counts I and VIII seek relief under 42 U.S.C. 1983. Doc. 1 PageID 17, 23–24. Section 1983 claims arising in Ohio must comply with the State's general personal injury statute of limitations, Ohio Rev. Code § 2305.10, requiring such actions to be filed within two years of their accrual. *Browning v. Pendleton*, 869 F.2d 989, 991–92 (6th Cir. 1989). Although state law sets the duration of the statute of limitations for § 1983 claims, federal law controls the analysis of when the claim accrues. *Eidson v. Tenn. Dep't. of Children's Servs.*, 510 F.3d 631, 635 (6th Cir. 2007). A § 1983 claim accrues when an event occurs which should have alerted a typical lay person to protect their rights. Id. quoting *Kuhnle Bros., Inc. v. County of Geauga*, 103 F.3d 516, 520 (6th Cir. 1997).

Upon the Juvenile Court's November 2018 decision, Plaintiff was undoubtedly aware no question remained over N.D.'s paternity and that he had lost all parental rights over N.D. After losing custody of their child, the average person would be on alert to protect their rights. Plaintiff was on notice of his alleged injury when custody was awarded to MCCS on November 14, 2018, by the Juvenile Court. Plaintiff's claims accrued on November 14, 2018—the date of the Juvenile Court decision. See *Eidson v. Tenn. Dep't. of Children's Servs.*, 510 F.3d 631, 635 (6th Cir. 2007). Plaintiff initiated his § 1983 claims in April 2021 well past the two-year statute of limitations. Counts I and VIII of the Complaint will be dismissed for this reason as well.

**E. *Rooker-Feldman***

The Kingstons move the Court to dismiss Counts IV-VII pursuant to the *Rooker-Feldman* Doctrine. Doc. 14. Under the *Rooker-Feldman* Doctrine, United States district courts do not have jurisdiction to overturn state court decisions even if the request to reverse the state court judgment is based on an allegation that the state court's action was unconstitutional. *Exxon Mobil Corp. v.*

*Saudi Basic Indus. Corp*., 544 U.S. 280, 292 (2005). Federal appellate review of state court judgments can only occur in the United States Supreme Court by appeal or by writ of certiorari. Id.

Under the *Rooker-Feldman* doctrine, federal district courts may not exercise appellate jurisdiction over state-court judgments. *Lance v. Dennis*, 546 U.S. 459, 463 (2006) (per curiam). Congress has granted the Supreme Court such appellate jurisdiction, but (aside from limited exceptions) it has empowered district courts with only original jurisdiction. *Exxon Mobil Corp. v. Saudi Basic Indus. Corp*., 544 U.S. 280, 283 (2005); *Nicholson v. Shafe*, 558 F.3d 1266, 1271–72 (11th Cir. 2009). The doctrine takes its name from the only two cases in which the Supreme Court has applied it: *Rooker v. Fidelity Trust Co*., 263 U.S. 413 (1923) and *D.C. Court of Appeals v. Feldman*, 460 U.S. 462 (1983).

In *Rooker*, parties who lost in state court brought suit in federal district court to have the state-court judgment "declared null and void" because it allegedly violated several constitutional provisions. 263 U.S. at 414–15. The Supreme Court held that "no court of the United States other than this court could entertain a proceeding to reverse or modify the judgment for errors of that character. To do so would be an exercise of appellate jurisdiction. The jurisdiction possessed by the District Courts is strictly original." Id. at 416 (internal citations omitted).

In *Feldman*, the District of Columbia Court of Appeals denied two applicants' requests for waivers from a bar-admission requirement. 460 U.S. at 468–73. The applicants sued in federal district court seeking an injunction allowing them to be admitted to the bar or to sit for the bar exam, as well as declarations that the D.C. court's actions violated the Fifth Amendment and federal antitrust laws. Id. The Supreme Court held that, because the denials of the waiver requests

27

were judicial in nature, the district court lacked subject-matter jurisdiction over the claims that were "inextricably intertwined" with the denials. Id. at 486–87. But the Court also held that there was subject-matter jurisdiction over the claims to the extent they generally challenged the validity of the bar rules themselves rather than the denials. Id. at 487. The Court noted, but did not decide, the issue of whether *res judicata* precluded review of this part of the applicants' complaints. Id. at 487–88.

The Supreme Court clarified the *Rooker-Feldman* doctrine in *Exxon*. It observed that lower courts had construed the doctrine "far beyond the contours of the *Rooker* and *Feldman* cases, overriding Congress' conferral of federal-court jurisdiction concurrent with jurisdiction exercised by state courts, and superseding the ordinary application of preclusion law." *Exxon*, 544 U.S. at 283. The Court held that *Rooker-Feldman* "is confined to cases of the kind from which the doctrine acquired its name: cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments." Id. at 284. The *Exxon* Court stressed the narrowness of the doctrine and that "*Rooker-Feldman* does not otherwise override or supplant preclusion doctrine." Id. It explained that *Rooker-Feldman* does not "stop a district court from exercising subject-matter jurisdiction simply because a party attempts to litigate in federal court a matter previously litigated in state court. If a federal plaintiff 'present[s] some independent claim, albeit one that denies a legal conclusion that a state court has reached in a case to which he was a party...', then there is jurisdiction and state law determines whether the defendant prevails under principles of preclusion.'" Id. at 293 (quoting *GASH Assocs. v. Vill. of Rosemont, Ill.*, 995 F.2d 726, 728 (7th Cir. 1993) and also citing with approval *Noel v. Hall*, 341 F.3d 1148, 1163–64 (9th Cir. 2003)).

The Kingstons have protection under claim preclusion; *Rooker-Feldman* is not applicable here. Thus, Motion to dismiss Counts IV-VII pursuant to the *Rooker-Feldman* Doctrine, Doc. 14, will be denied. See *Klayman v. Deluca*, No. 15-cv-80310-KAM, 2016 WL 1045851, at *3 (S.D. Fla. Mar. 16, 2016), aff'd, 712 F. App'x 930 (11th Cir. 2017).

## V.    Conclusion

In light of the foregoing, the Motion to Dismiss by Defendant Brigid's Path with Jill Kingston as C.E.O., Doc. 13, 16, is **GRANTED**, dismissing Counts I through VI; Motion to Dismiss for Failure to State a Claim and on Additional Grounds by Defendants Kingstons, Doc. 14, is **DENIED**; Motion to Dismiss for Failure to State a Claim by Ohio Department of Jobs and Family Services, Doc. 17, is **GRANTED**, dismissing Counts V, VIII (previously VII) and IX (previously VIII); and Motion to Dismiss for Failure to State a Claim by Montgomery County Commissioners and Montgomery County Jobs and Family Services, Doc. 23, is **GRANTED**, dismissing Counts I through IX. Thus, all claims against all defendants are **DISMISSED**. The instant case is **TERMINATED** on the dockets of the United States District Court for the Southern District of Ohio, Western Division at Dayton.

**DONE** and **ORDERED** in Dayton, Ohio, this Thursday, June 1, 2023.

s/Thomas M. Rose

_____
THOMAS M. ROSE
UNITED STATES DISTRICT JUDGE